UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-020 (ADM/JFD)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PLEA AGREEMENT AND** |
| | ) | **SENTENCING** |
| MARION QUINTEL WARE, | ) | **STIPULATIONS** |
| | ) | |
| Defendant. | ) | |

The United States of America and the defendant, MARION QUINTEL WARE, agree to resolve this case on the following terms and conditions. This plea agreement binds only Mr. Ware and the United States Attorney's Office for the District of Minnesota. It does not bind any other United States Attorney's Office or any other federal or state agency.

1.     **Charges**.  Mr. Ware agrees to plead guilty to Count 1 of the Indictment, which charges him with Aiding and Abetting Carjacking in violation of 18 U.S.C. §§ 2 and 2119(1).

2.     **Factual Basis**.  Mr. Ware stipulates and agrees to the following facts and further agrees that, were this matter to go to trial, the United States would prove the following facts beyond a reasonable doubt:

(a) On June 15, 2021, Mr. Ware and Victim 1, an acquaintance whom he had known for about a year, agreed to get together and smoke marijuana. They agreed that Victim 1, who had a car, would buy marijuana and pick up Mr. Ware on the 2600 block of Blaisdell Avenue South in Minneapolis. Mr. Ware lived in an apartment

on that block and Victim 1 had picked him up there in the past.  The two had smoked marijuana together before. On these previous occasions, the arrangement was that Victim 1 would purchase around an eighth of an ounce to a quarter of an ounce of marijuana, Mr. Ware would pay him for half of it, they would smoke it together and split the rest.

(b) Victim 1 bought the marijuana and drove to pick up Mr. Ware. When he arrived, he saw that Mr. Ware was waiting for him with another male, who Victim 1 had never met.  Mr. Ware got in the passenger side of the car and the third man got into the back seat.   After they drove for a couple of blocks, Victim 1 stopped the car so they could prepare a blunt to smoke. At that point, Mr. Ware had a black and purple gun in his hands, pointed it at Victim 1 and said "I'm going to need all of that," meaning that Mr. Ware wanted to take everything he had on him. Victim 1 hesitated for a few seconds before responding, and during that time the back seat passenger hit him in the head with what felt like a gun.   It was metallic and heavy, and it split Victim 1's forehead open just above his right eye. At that time, Victim 1 tried to get out of the car and run away. Mr. Ware and the other robber were grabbing him and trying to pull him back into the car, ripping his shirt.   Victim 1 was able to get away and he ran into a bystander who allowed him to use his cell phone to call the police. Mr. Ware and the other man had driven away in his car, with his wallet and cell phone still inside. Victim 1's car was a 2007 red Ford Focus, bearing Minnesota license plate CHY098 and VIN number 1FAHP34NX7W113781.

(c) Two weeks later, on July 1, 2021, Minneapolis police patrolling the area of South Minneapolis around 24th and Nicollet observed Mr. Ware driving the stolen Ford Focus. Officers tried to conduct a stop, but Mr. Ware fled from them, crashed the vehicle into a median and fled on foot.   After a foot chase through the neighborhood, where they lost sight of Mr. Ware at times, officers located him in the back storage compartment of a van that was parked about three blocks from where he had abandoned the stolen vehicle.

(d) When officers went back to trace his flight path, they recovered a black and silver polymer 80 semiautomatic handgun with an extended magazine, loaded with 10 9mm cartridges.   Mr. Ware admits that he tossed this gun while running away from police.

(e) Mr. Ware agrees the 2007 red Ford Focus, bearing Minnesota license plate CHY098, bearing VIN number 1FAHP34NX7W113781 was transported, shipped, or received in interstate or foreign commerce.  He further agrees that he and his accomplice, working together, used force, violence or intimidation with the intent to cause serious bodily harm in order to obtain the vehicle from Victim 1.

3.      **Waiver of Pretrial Motions**.   Mr. Ware understands and agrees that he has certain rights to file pretrial motions in this case.   As part of this plea agreement and based upon the concessions of the United States contained herein, Mr. Ware knowingly, willingly and voluntarily agrees to withdraw any pretrial motions he may have already filed and to give up the right to file any additional pretrial motions.

4.      **Statutory Penalties**.   The parties agree that Count 1 of the Indictment carries the following statutory penalties:

   a. a maximum term of 15 years' imprisonment;

   b. a supervised release term of not more than 3 years;

   c. a fine of up to $250,000; and

   d. a mandatory special assessment of $100.

5.      **Guidelines Calculations**.   The parties acknowledge Mr. Ware will be sentenced in accordance with Title 18, Chapter 227 (18 U.S.C. §§ 3551 – 3586) and with reference to the advisory United States Sentencing Guidelines.   The parties also acknowledge the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence, and the parties stipulate to the following Guidelines calculations.   Notwithstanding the following stipulations, nothing in this plea agreement prevents the parties from bringing to the attention of the Court and the Probation Office all information in their possession regarding the offense, including relevant conduct, and Mr. Ware's background.

   a.      **Base Offense Level**.   The parties agree that the base offense level for Count 1 of the Indictment is **20**.   U.S.S.G. § 2B3.1(a).

      b.     **Specific Offense Characteristics**.   The parties agree that the offense level should be **increased by 5 levels** because a firearm was brandished or possessed, plus another **2 levels** because bodily injury occurred.   U.S.S.G. §§ 2B3.1 (b)(2)-(3).   The parties agree that no other specific offense characteristics or adjustments apply.

      c.     **Chapter Three Adjustments**.   The parties agree that the offense level should be **increased by 2 levels** because Mr. Ware recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement. U.S.S.G. § 3C1.2.   The parties agree that other than as provided for in this paragraph and paragraph d. below for acceptance of responsibility, no other Chapter Three adjustments apply.

      d.     **Acceptance of Responsibility**.   The parties agree that if and only if the defendant: (1) provides full, complete and truthful disclosures to the United States Probation and Pretrial Service Office, including providing complete, accurate and truthful financial information; (2) testifies truthfully at the change-of-plea and sentencing hearings; (3) complies with this agreement; and (4) does not engage in any act inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report, the United States will recommend that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a), and will move for an additional one-level reduction under § 3E1.1(b).   The defendant understands that any reduction for acceptance of responsibility shall be determined by the Court in its discretion. Nothing in this agreement, however, limits the right of the Government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

After applying all adjustments, the **adjusted total offense level is 26** (20+5+2+2-3).

      e.     **Criminal History Category**.   Based on the information currently available, the parties believe the defendant has a criminal history category of **II**. This is not a stipulation but merely a belief based on an assessment of the information currently known.   Accordingly, the parties agree that Mr. Ware's actual criminal history category and related status will be determined by the Court based on the information presented in the Presentence Report and by the arguments made by the parties at the time of sentencing.

f.    **Guidelines Ranges**.   If the adjusted total offense level is **26**, and the criminal history category is **II**, the advisory Guidelines range is **70-87 months' imprisonment**.

g.    **Fine Range**.   If the adjusted total offense level is 26, the applicable fine range is $25,000 to $250,000. USSG § 5E1.2(c)(3).

h.    **Special Assessments**.   The Guidelines require payment of a special assessment in the amount of $100.00.   USSG § 5E1.3.   Mr. Ware understands and agrees that this special assessment is due and payable at or before sentencing.

i.    **Supervised Release**.   The Guidelines require a term of supervised release of at least 1 year but not more than 3 years.   USSG § 5D1.2(a)(2).

6.    **Discretion of the Court**.   The foregoing stipulations bind the parties but not the Court.   The parties understand the Sentencing Guidelines are advisory and their application is a matter falling solely within the Court's discretion.   The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category.   The Court may also depart from the applicable Guidelines.   If the Court determines the applicable Guidelines calculations and/or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and Mr. Ware will be sentenced pursuant to the Court's determinations.

7.    **Sentencing Recommendation and Departures**.   Both parties reserve the right to make departure motions and to oppose any such motions made by the opposing party.

8.    **Consideration Related to State Charges**. The parties acknowledge that in entering this Plea Agreement, Mr. Ware is relying upon concessions made by the United States as set forth herein, as well as certain concessions made by state authorities.

Specifically, the Hennepin County Attorney's Office has agreed that if Mr. Ware pleads guilty as set forth in this Plea Agreement, they will dismiss two pending cases at the time of sentencing:   the June 15, 2021 carjacking charge that is based on the instant offense conduct (27-CR-21-12356), and a second degree assault/prohibited person in possession of firearms case based on conduct that occurred on June 21, 2021 (27-CR-21-17386).

9.     **Revocation of Supervised Release**.   Mr. Ware understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke his supervised release, and Mr. Ware could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3).   *See* USSG §§ 7B1.4, 7B1.5.   Mr. Ware also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

10.     **Restitution.**     Mr. Ware understands and agrees that 18 U.S.C. § 3663, and the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, apply to this case and that the Court is required to order him to make restitution to the victim of his crime.   Mr. Ware agrees that he owes restitution.   The defendant agrees that the amount of restitution he owes is $600. Based on this agreement, the parties waive any evidentiary hearing on the issue of restitution.

Mr. Ware represents that he will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which he has any right, title, or interest.   Mr. Ware agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution and fines ordered by the Court.

As part of this Agreement, Mr. Ware will complete, under penalty of perjury, a financial disclosure form—provided by the United States—listing all of his assets and financial interests valued at more than $1,000.   Mr. Ware agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstance.   The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on her to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

11.    **Waiver of Appeal and Postconviction Petition**.   The parties are expressly aware that Title 18, United States Code, Section 3742, affords them the right to appeal the sentence imposed in this case.   Acknowledging this right, and in exchange for the concessions made as part of this agreement, the parties hereby waive all rights conferred by Title 18, United States Code, Section 3742, to appeal the sentence imposed or the basis of conviction on any ground, except Mr. Ware may appeal the sentence imposed if it is greater than 87 months' imprisonment, and the United States may appeal the sentence imposed if it is less than 70 months' imprisonment.   Mr. Ware also understands his rights to file a collateral postconviction civil petition contesting the legality of his conviction or sentence and, except for a claim of ineffective assistance of counsel, he knowingly and voluntarily waives all rights to contest his conviction or sentence in any collateral postconviction civil proceeding, including one pursuant to Title 28, United States Code, Section 2255. Mr. Ware has discussed these rights with his counsel and understands the rights being waived.

12.     **Waiver of Freedom of Information Act and Privacy Act**.   In exchange for the concessions of the United States made herein, Mr. Ware agrees to waive all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

13.     **Complete Agreement**.   This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.

Dated:  5|19| 2022

ANDREW M. LUGER
United States Attorney

BY: HARRY M. JACOBS
Assistant United States Attorney

Dated:  5/19/2022

MARION QUINTEL WARE
Defendant

Dated:  5 / 19 / 2022

AARON MORRISON, ESQ.
Attorney for Defendant